**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KRAUS INDUSTRIES, INC., d/b/a OLSON INDUSTRIES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-00542 |
| | ) | |
| JERRY MOORE AND 3-J MACHINING SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Defendants/Counterclaim-Plaintiffs. | ) | |

**MEMORANDUM OPINION**

This is an action for alleged defamation, disparagement, and intentional infliction of emotional distress.  Plaintiff Kraus Industries, Inc., doing business as Olson Industries, Inc. (hereinafter, "Kraus" or "Plaintiff"), filed this suit in the Court of Common Pleas of Allegheny County against Defendants Jerry Moore and 3-J Machining Services, Inc. (hereinafter, "Defendants", "Moore" or "3-J"), who removed the instant case to this Court.   After the Court's ruling on an initial motion to dismiss their original Counterclaims, the Defendants filed an Amended Counterclaim, alleging (1) fraud, (2) detrimental reliance and equitable estoppel, (3) unjust enrichment, (4) defamation, slander and libel, (5) interference with contractual relations, and (6) a request for sanctions under various state and federal statutes as well as Federal Rule of Civil Procedure 11.

Currently pending before this Court is Plaintiff's Motion to Dismiss Amended Counterclaim Counts I, II, III, V, and VI Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted [DE 55]. Specifically, Kraus argues that Defendants' Amended Counterclaim fails to state a claim

1

upon which relief can be granted as to (1) fraud, (2) detrimental reliance and equitable estoppel, (3) unjust enrichment, (4) interference with contractual relations, and (5) their request for sanctions and attorney's fees.

## STANDARD OF REVIEW

Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint. *Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc.*, Civil Action No. 06-5469, 2007 WL 2254422, at *2 (E.D. Pa. Aug. 2, 2007) (citing *United States v. Union Gas Co.*, 743 F.Supp. 1144, 1150 (E.D. Pa. 1990)).

The applicable inquiry under Rule 12(b)(6) is well-settled.  In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the non-moving party. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a [defendant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)).  Claims should be dismissed under Rule 12(b)(6) "only if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. Gen. Nutrition Cos.,* 186 F.3d 338, 342 (3d Cir.1999) (internal citation omitted); *Evancho*, 423 F.3d at 351 (quoting *D.P. Enter.*, 725 F.2d at 944) (providing that a motion to dismiss pursuant to Rule 12(b)(6) should be granted only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved").  Under this standard, a complaint, or here

a counterclaim, will be deemed to have alleged sufficient facts if it adequately puts the plaintiff on notice of the essential elements of defendant's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).   However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997).

Under the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a), a complaint requires only a short and plain statement showing a right to relief rather than a "detailed recitation of proof that in the end establish[es] such a right." *Pryor v. NCAA*, 288 F.3d 548, 564 (3d Cir. 2002).   Overall, "courts have an obligation...to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable.  We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).   Finally, the defendant bears the burden to demonstrate that the complaint fails to state a claim. *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

## FACTUAL BACKGROUND

In view of the appropriate legal standard, this Court must "accept as true all of the allegations in the [Defendants' Amended Counterclaim] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *U.S. ex rel. Magid v. Wilderman*, No. Civ. A. 96-CV-4346, 2005

WL 469590, at *1 (E.D. Pa. Feb. 28, 2005) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989)).  The Court summarizes the pertinent facts below.

This case arises from a contract between Kraus and Thomas Steel Strip Corporation ("Thomas"), in which Kraus agreed to supply steel to Thomas.  The contract between Kraus and Thomas called for Kraus to use "310 grade stainless steel."  In turn, Kraus hired 3-J as a subcontractor to fabricate, machine, and assemble certain recuperators and burners to be used in the steel-making facility owned by Thomas.  The Defendants allege that the Plaintiff shipped a lesser grade of stainless steel to Defendant 3-J, specifically 304 grade stainless steel.  When confronted with this discrepancy, according to the Defendants, the Plaintiff instructed them "not to worry about the steel grades and that [Defendants] should start making the parts ... from 304 grade stainless steel."  Docket No. 35, at 13.B.  Thomas subsequently rejected at least two shipments of burners and recuperators as nonconforming because they were marked as 304 grade stainless steel.  In late March 2005, an employee of Kraus allegedly instructed Defendant Moore to "erase the 304 markings on the steel and to restencil it as 310 grade stainless steel."  *Id.*, at ¶23.  After first attempting to comply with these instructions, Defendants subsequently refused to comply with Plaintiff's alleged instructions and contacted Thomas and informed it that Kraus "had instructed 3-J to remove the 304 stenciling and restencil the parts as conforming 310 steel."  *Id.*, at ¶24.

As a result, Plaintiff and Thomas became involved in a "dispute" (neither party provides any further detail thereto), which, in turn, led to Plaintiff Kraus filing a separate lawsuit against 3-J in or about April 2005 in state court in Berea Municipal Court, Cuyahoga County, Ohio ("Ohio action").  In that lawsuit, Kraus alleged that 3-J failed to

complete the required contractual work on the recuperators and burners and altered checks issued to them by the Plaintiff.  On or about March 16, 2006, the Ohio action settled, with Kraus agreeing to pay 3-J $7,250.

Plaintiff's present Complaint centers on the following allegation:  Defendant Moore made statements to Thomas, informing it that Plaintiff Kraus had asked Defendant Moore to perpetrate fraud on Thomas by re-stenciling the grade of stainless steel (from a lower grade stainless steel to a higher grade stainless steel), which the Plaintiff had supplied to the Defendants.  As a result of these alleged false statements, Thomas filed a lawsuit against Kraus in the Court of Common Pleas of Allegheny County, alleging fraud, and ceased doing business with Kraus.  As to the instant action, Kraus asserts that these alleged false statements have harmed its reputation in the business community, have deterred third parties from associating or dealing with it, and have caused it to suffer money damages.

In response to Plaintiff Kraus's Complaint, Defendants 3-J and Moore brought Counterclaims (and subsequently amended the same) for fraud (Count I), detrimental reliance/equitable estoppel (Count II), unjust enrichment (Count III), defamation, slander and libel (Count IV), intentional infliction of emotional distress (Count V), interference with contractual relations (Count VI), and a request for sanctions (Count VII), based, for the most part, on alleged statements made by Kraus to Defendants 3-J and Moore regarding the promise of "substantial new and profitable work if 3-J continued to work on [Plaintiff Kraus's] project for Thomas."  Docket No. 35, at ¶20.[1]  Defendants 3-J and

---

[1]      On May 23, 2006, Defendants filed their original Answer, Affirmative Defenses, Counterclaim and Motions for Sanctions pursuant FRCP 11 and 42 P.a. C.S.A. § 2503 [DE 4], alleging seven (7) counterclaims: (1) fraud; (2) detrimental reliance/equitable estoppel; (3) unjust enrichment; (4) defamation, slander and libel; (5) intentional infliction of emotional distress; (6) interference with contractual relationships; and (7) a violation

Moore allege that they justifiably and foreseeably relied upon such willful misrepresentations by Kraus and that such reliance induced them to provide proprietary information as well as additional work.   Docket No. 35, at ¶¶27-28.  Additionally, Defendants 3-J and Moore claim that Kraus intentionally slandered and defamed them by commencing the original suit, thereby injuring their good name and business reputation and making it difficult for them to do work in the steel industry.  Docket No. 35, at ¶¶61-65.

In the instant Motion, Plaintiff Kraus moves to dismiss Counts I, II, III, V, and VI as pled in Defendants' Amended Counterclaim.[2]   The Court will address Plaintiff's arguments in turn.

## CHOICE OF LAW

As a threshold matter, as this Court has diversity jurisdiction over the instant action, the Court must determine the applicable substantive law, and, in order to do so, this Court looks to the choice of law rules of the forum state, i.e., the Commonwealth of Pennsylvania.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Pennsylvania choice-of-law rules, "the first question to be answered in addressing

---

of 42 Pa. C.S.A. § 2503.  On June 13, 2006, Plaintiff Kraus filed a Motion to Dismiss Counterclaim Counts I, II, III, IV, V, VI, and VII Pursuant to Federal Rule of Civil Procedure 12(b) for Failure to State a Claim upon which Relief can be Granted [DE 9].  On January 12, 2007, Judge Hardiman granted Plaintiff's motion to dismiss and dismissed Defendants' counterclaims without prejudice but ordered the Defendants to refrain from filing an amended counterclaim until further order of Court.  *See* Docket No. 25.  On March 7, 2007, Judge Hardiman ordered that the Plaintiff shall have thirty (30) days, or on or before April 6, 2007, within which to file an amended counterclaim, if they so choose.  *See* Docket Nos. 32 and 33.  Subsequently, on April 6, 2007, Defendants filed their Amended Counterclaim.  On June 22, 2007, the Court held a status conference, at which the Court and the parties discussed the status of the case and possible settlement.  The parties indicated to the Court that they were not inclined to further negotiations until the Court ruled on the pending motion.

[2]      Plaintiff's Motion does not challenge Count IV for defamation, slander, and libel.  While the Court expresses no opinion at this time as to the merits of Defendants' defamation, slander, and libel claim at Count IV, the Court notes that the statute of limitations for slander or libel in Pennsylvania is one year.  *See* 42 Pa C.S.A. 5523(1).

a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." *Henkel Corp. v. Hartford Accident & Indemnity Co.*, 399 F.Supp.2d 607, 611 (E.D. Pa. 2005) (citing *City of Philadelphia v. One Reading Ctr. Assoc.*, 143 F.Supp.2d 508, 512 (E.D. Pa. 2001) (quoting *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999))). "If the parties have agreed to the applicable law, that agreed-upon law shall generally be given effect." *Id.*

Here, none of the parties raise the choice-of-law issue in their briefs, and in fact, the parties almost exclusively rely on Pennsylvania law in support of their respective positions. Therefore, the Court finds that the parties have implicitly consented to the application of Pennsylvania law. Moreover, as this is, at least in part, a defamation action, "[u]nder a traditional choice of law analysis, the state where the plaintiff is domiciled generally, but not always, has the greater interest in a defamation case." *Osby v. A & E Television Networks and Kurtis Productions, Ltd.*, No. CIV. A. 96-7347, 1997 WL 338855, at *3 (E.D. Pa. Jan. 17, 1997) (citing *Restatement (Second) of Conflict of Laws* § 150(2)). Here, the Plaintiff is domiciled in Pennsylvania. *See* Compl., ¶ 1.

Accordingly, based on the parties' implicit agreement to follow Pennsylvania law and the state of Pennsylvania's interest in this action, the Court sees no reason to *sua sponte* engage in a choice-of-law analysis. *See Osby v. A & E Television Networks and Kurtis Productions, Ltd.*, No. CIV. A. 96-7347, 1997 WL 338855, at * (E.D. Pa. Jan. 17, 1997) ("Where the parties have agreed to apply Pennsylvania law and Pennsylvania has an interest in the outcome of the litigation, there is no reason for the court, 'sua sponte, to challenge the parties' consensual choice of law'") (quoting *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 269-70 (3d Cir. 1980); *Marcone v. Penthouse International, Ltd.*,

533 F.Supp. 353, (D.C. Pa. 1982) (same) (citing *Steaks Unlimited*, 623 F.2d at 269-70), *rev'd by* 754 F.2d 1072 (3d Cir. 1985) (providing that "the district court was correct in applying Pennsylvania law")).

## ANALYSIS

### 1.    Count I--Fraud

Plaintiff Kraus argues that Defendants' counterclaim for fraud is barred by the doctrine of the "gist of the action."  In the alternative, Kraus argues that Defendants 3-J and Moore cannot maintain their fraud claim because it alleges a breach of a promise to do something in the future, which is not a proper basis for fraud.  Defendants respond that the "gist of the action" doctrine acts only as a bar to a claim for fraud in the performance of a contract, and not "necessarily" as a bar to a claim for fraud in the inducement.

### A.    "Gist of the action" doctrine

Before delving into the doctrine of the "gist of the action", the Court notes that based on Defendants' "fraud" counterclaim as pled in their Amended Counterclaim at Count One as well as the instant briefs, it is unclear whether this claim sounds in fraud in the inducement of the contract or fraud in the performance of the contract.[3]  Nonetheless, while it is true that the "gist of the action" doctrine may not bar all fraud in the inducement claims, "the particular theory of fraud–whether it lies in inducement o[r]

---

[3]       For example, while the title to Count One in Defendants' Amended Counterclaim provides little assistance, *see* Defs.' Am. Counterclaim at 16, (reading "Count 1–Fraud"), the language thereafter sounds in fraud in the inducement, *see generally id.* at ¶¶ 43-49 (alleging that Plaintiffs statements regarding the possibility of future work acted as an "inducement" to perform).  Moreover, Defendants' response brief to the instant motion supports such a reading.  *See* Docket No. 58, at 9-11.  However, based on its reliance on a case barring a claim of fraud in the performance, Plaintiff (apparently) characterizes Defendants' counterclaim as such.

performance–is not dispositive." *Tier 1 Innovation*, 2007 WL 1377664, at *3 (citing numerous cases in which Pennsylvania courts apply gist of the action doctrine as a bar to a claim for fraud in the inducement).  For example, fraud in the inducement claims are not barred by the gist of the action doctrine where the fraud involves representations of fact independent of promises of performance made in the contract.  *See eToll Inc. v. Elias/Savion Adv. Inc.*, 811 A.2d 10 (Pa. Super. 2002).  On the other hand, fraud in the inducement based on statements made with regard to performance of the contract are barred.  *Quandry Solutions, Inc. v. Verifone Inc.*, Civil Action No. 07-097, 2007 WL 655606, at *3 (E.D. Pa. Mar. 1, 2007).  Accordingly, the Court need not construe Defendants' "fraud" counterclaim one way or the other.

Pennsylvania's gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort."  *Hospicomm v. Fleet Bank, N.A.*, 338 F.Supp.2d 578, 582 (E.D. Pa. 2004); *see also Tier 1 Innovation, LLC v. Expert Technology Group, LP*, Civil Action No. 06-cv–4622, 2007 WL 1377664, at *2 (E.D. Pa. May 8, 2007) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 3 (3d Cir. 2002)) (the gist of the action doctrine prevents plaintiffs from recovering on a separate tort claim which simply restates a claim for breach of contract).[4]  In determining whether the "gist of the action" doctrine applies, a court must determine "whether the source of the duties breached were 'intertwined' with obligations under the contract, or if they were merely collateral."  *Tier1 Innovation*, 2007 WL 1377664, at *2 (citing

---

[4]
       The Court notes that while the Pennsylvania Supreme Court has not expressly adopted the "gist of the action" doctrine, lower Pennsylvania state courts and several United States District Courts in Pennsylvania have predicted that it will.  *Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc.*, Civil Action No. 06-5469, 2007 WL 2254422, at *5 n.5 (E.D. Pa. Aug. 2, 2007) (citing as examples *Retail Brand Alliance Inc. V. Rockvale Outlet Center, LP*, 2007 U.S. Dist. LEXIS 7318, at *27, n. 8 (E. D. Pa. 2007); *eToll*, 811 A.2d at 14 (Pa.Super.Ct. 2002)).

*Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, 2006 WL 3097771, (E.D. Pa. Oct. 30,

2006) (citing *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644,

651 (W.D. Pa. 1999))).   The Court in *eToll* explained the sometimes blurred distinction:

"Tort actions lie for breaches of duties imposed by law as a matter of social policy, while

contract actions lie only for breaches of duties imposed by mutual consensus agreements

between particular individuals."   *Tier1 Innovation*, 2007 WL 1377664, at *2 (citing

*eToll*, 811 A.2d at 14) (additional citation omitted)).   The Court in *eToll* offered

examples, noting that other courts have held that the gist of the action doctrine bars tort

claims:

> (1) arising solely from a contract between the parties; (2)
> where the duties allegedly breached were created and
> grounded in the contract itself; (3) where the liability stems
> from a contract; or (4) where the tort claim essentially
> duplicates a breach of contract claim or the success of
> which is wholly dependent on the terms of a contract.

*eToll*, 811 A.2d at 19 (internal citations and quotations omitted).

      Here, in their Amended Counterclaim for fraud, Defendants allege various

instances of fraud, including Plaintiff's alleged fraudulent representation that Defendants

would receive additional profitable contracts, "which serve[d] as an inducement for 3-J

and Moore to perform the work on the TSS project."   Docket No. 35, at ¶ 44.

      In a case with strikingly similar facts, a court held that promises made during the

course of a relationship as to a future partnership and business relationship were not

barred by the gist of the action doctrine because they may relate to "promises of future

business not contemplated by the sales contract." *Polymer Dynamics, Inc. Bayer Corp.*,

No CIV. A. 99-4040, 2000 WL 1146622, at *7 (E.D. Pa. Aug. 14, 2000).   In *Polymer*, the

Court determined that while "[t]he factual bases underlying plaintiff's fraud and contract

claims clearly overlap", "the court cannot conclude beyond doubt from the pleadings that the contract is not collateral to any of plaintiff's fraud allegations." *Id.* Likewise here, while Defendants' fraud counterclaim clearly relates (to a certain extent) to the underlying contract, the Court cannot say that the fraud counterclaim is "intertwined" with the underlying contract. Accordingly, *at this early stage in the litigation*, and considering other courts' reticence to apply the "gist of the action" doctrine at the motion to dismiss stage, *see Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F.Supp.2d 826, 834 (E.D. Pa. 2000) (citing *Grode v. Mutual Fire Ins. Co.*, 623 A.2d 933, 936-37 (Pa. Cmwlth. 1993) (applying the "gist of the action" doctrine but noting "that caution should be exercised in determining the gist of an action at the motion to dismiss stage"), the Court declines to dismiss Defendants' fraud counterclaim based on the "gist of the action" doctrine.

### B.    *Fraud as a future promise*

Next, Kraus argues that Defendants 3-J and Moore cannot maintain their fraud claim because it alleges a breach of a promise to do something in the future, which is not a proper basis for fraud. The Defendants fail to specifically respond to this argument.

Under Pennsylvania law, "to recover on a claim of fraud, the plaintiff must prove by clear and convincing evidence six elements: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance." *McCloskey v. Novastar Mortg., Inc.*, Civil Action No. 05-1162, 2007 WL 2407103, at *9 (E.D. Pa. Aug. 21, 2007) (citations omitted); *see*

*also Fahs-Rolston Paving Corp. v. Ammann & Whitney Pennsylvania, Inc.*, Civil Action No. 05-CV-5082, 2007 WL 2345280, at *2 (E.D. Pa. Aug. 15, 2007) (same) (citation omitted).

"The breach of a promise to do something in the future is not fraud." *Fishkin v. TABFG, LLC*, No.Civ.A. 03-3766, 2006 WL 1517397, at *8 (E.D. Pa. May 31, 2006) (citing *Edelstein v. Carole House Apartments, Inc.*, 220 Pa.Super. 298, 286 A.2d 658, 661 (Pa.Super.Ct. 1971) (citations omitted)); *see also United Products Corp. v. Admiral Tool & Mfg. Co.*, 122 F.Supp 2d 560, 566 (E.D. Pa. 2000); *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa.Super.Ct. 1997) (citing *Krause v. Great Lakes Holdings, Inc.*, 563 A.2d 1182, 1187 (Pa.Super.Ct. 1989) ("It is well-established that the breach of a promise to do something in the future is not actionable in fraud"). On the contrary, "[i]t is well-established that a cause of action for fraud must allege a misrepresentation of a past or present material fact." *Krause*, 563 A.2d at 1187.

Here, the alleged fraud (to a certain extent) centers on statements made by Plaintiff to Defendants regarding the promise of future work. *See* Docket No. 35, at ¶¶20, 27, 44 ("[Kraus] fraudulently represented to [Defendants 3-J and Moore] that it would receive additional profitable contracts from [Kraus]. [Kraus] knew that these statements were fraudulent and would serve as an inducement for 3-J and Moore to perform the work on the TSS project at a loss. Further, [Kraus] was aware that its fraudulent inducements of future work would cause [Defendants] to disclose valuable proprietary and business information over to [Kraus]"). Accordingly, to the extent that Defendants' counterclaim for fraud concerns the breach of a future promise, the Court finds that said counterclaim cannot, as a matter of law, form a basis for a cause of action

in fraud.

Thus, Plaintiff's motion to dismiss is granted and the Court dismisses with prejudice said allegations of the Amended Counterclaim.  *See Krause*, 563 A.2d at 1187 (finding that an oral representation that party would assume a debt obligation in exchange for the forbearance from legal action was not actionable in fraud because the representation was a promise to do something in the future); *Edelstein*, 286 A.2d at 661 (finding that promise to relieve person of liability if certain condition was met is not actionable in fraud because representation was promise to do something in future); *United Products*, 122 F.Supp.2d at 566 (reasoning that a claim involving "a future condition, intention, or promise" may be barred).  However, to the extent that Defendants' Amended Counterclaim for fraud concerns a misrepresentation of a past or present material fact, *see* Docket No. 35, at ¶¶23, 24, 28-29, 31-34, 36, 45, 47, Plaintiff's motion to dismiss is denied without prejudice.

### 2.      Count II–Detrimental reliance/equitable estoppel

Kraus argues that (1) the law does not recognize a claim for equitable estoppel and (2) to the extent that Defendant intended to plead promissory estoppel, because Defendants have pled the existence of an underlying contract, a cause of action for promissory estoppel is "unavailable."  Docket No. 56, at 9.  Defendants 3-J and Moore fail to directly respond and instead only assert that its counterclaim for promissory estoppel is properly pled as an alternative cause of action to a breach of contract claim. *See* Docket No. 58, at 11.

First, as Plaintiff Kraus correctly points out, equitable estoppel "is not an independent cause of action but one 'raised either as an affirmative defense or as grounds

to prevent the defendant from raising a particular defense.' " *Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP*, Civil Action No. 06-01857, 2007 WL 966509, at *3 (E.D. Pa. March 28, 2007) (quoting *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir.1990) (citation omitted)); *see also Bair v. Purcell*, Civil Action No. 1:04-CV-1357, 2007 WL 2219306, at *17 (M.D. Pa. Aug. 2, 2007) (providing that "equitable estoppel is raised as an affirmative defense or as grounds to prevent a defendant from raising a particular defense, it cannot be pleaded as a separate cause of action"). Accordingly, to the extent Defendants' Amended Counterclaim pleads "equitable estoppel" as a separate cause of action at Count II, said Count is dismissed with prejudice.[5]

Next, the Court turns to Count II of Defendants' Amended Counterclaim to the extent they plead a cause of action for "detrimental reliance."  While Defendants 3-J and Moore failed to address the issue in their response brief, the Court construes Count II as a claim for promissory estoppel.[6]

"Under Pennsylvania law, the elements for a promissory estoppel or detrimental reliance claim are: '(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3)

---

[5]

The Court advises the Defendants that they may still assert equitable estoppel as an affirmative defense, if they so choose.

[6]

The Court notes that while some courts use the phrases promissory estoppel and detrimental reliance interchangeably, some courts construe detrimental reliance as an element of a cause of action for promissory estoppel. *See Raykhman v. Digital Elevator Co.*, Civ. A. No. 93-1347, 1993 WL 370988, at *6 (E.D. Pa. Aug. 30, 1993); *Rost v. National R.R. Passenger Corp.*, Civ. A. No. 88-6598, 1992 WL 220995, at *7 (E.D. Pa. Aug. 31, 1992) ("Detrimental reliance is a *sine qua non* of any promissory estoppel cause of action") (emphasis in original).

injustice can be avoided only by enforcing the promise.' " *KSM Associates, Inc. v. ACS State Healthcare, LLC*, Civil Action No. 05-4118, 2006 WL 1308267, at *2 (E.D. Pa. May 10, 2006) (quoting *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citation omitted); *see also C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir.1988) (Pennsylvania adopts promissory estoppel doctrine embodied in Restatement (Second) of Contracts § 90). The doctrine of promissory estoppel is applied "to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, at *23 (E.D. Pa. 2006) (citing *Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000) (footnote omitted)).

"Promissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." *Iversen Baking Co., Inc. v. Weston Foods, Ltd.*, 874 F.Supp. 96, 102 (E.D. Pa. 1995). Furthermore, while "[c]ourts have held that breach of contract and promissory estoppel may be pleaded in the alternative, but that if the court finds that a contract exists, the promissory estoppel claim must fall." *Id.*; *see also Comcast Spectacor*, 2006 WL 2302686, at *23 (citing *Iversen*, 874 F.Supp. 102).[7]  In the instant case, as pled in Plaintiff's Complaint, *see* Docket No. 1, Exh. 2, ¶ 6 ([Plaintiff] sub-

---

[7]

In response to Plaintiff's argument as to Count II, Defendants merely assert that promissory estoppel may be properly pled as an alternative cause of action to a breach of contract claim. *See* Docket No. 58, at 11. While the Court acknowledges this principle of alternative pleading from a general perspective, *see* Fed.R.Civ.P. 8(a) (providing that "[r]elief in the alternative ... may be demanded"), the Court notes that Defendants did not plead breach of contract in their Amended Counterclaim. Thus, the Court fails to see how the Defendants can alternatively plead promissory estoppel to a claim not properly pled before this Court. Furthermore, in support of the general principle of alternative pleading, Defendants rely upon *Birchwood Lakes Comm. Assoc., Inc. v. Comis*, 442 A.2d 304 (Pa. Super. 1980).  However, not only does *Birchwood* not stand for the stated proposition, but, in that case, the plaintiff pled two causes of action: one in contract and one in quasi-contract (unjust enrichment). *See id.* at 309. Therefore, *Birchwood* does not apply to this Court's consideration of the promissory estoppel claim.

15

contracted with [Defendant] 3-J Machining to machine and assemble recuperators and burners to be used in a steel making facility owned by [Plaintiff's] customer, Thomas Steel Strip Corporation"), and Defendants' Amended Counterclaim, *see* Docket No. 35, Exh. 5 (Purchase Order from Plaintiff to Defendant 3-J), a contract exists (or, at least, existed) between the Plaintiff and the Defendants and neither of the Defendants challenge the validity thereof.   However, when the alleged promise is "distinct from the original contract", the contract may not bar a claim for promissory estoppel. *See Northeastern Power, Co. v. Balcke-Durr, Inc.*, No. 97-CV-4836, 1999 WL 674332, at *10 (E.D. Pa. Aug. 23, 1999).   Here, the alleged promise serving as the basis for Defendants' promissory estoppel claim centers on "future profitable contracts to perform the work", Docket No. 35, at ¶51, which, based on the facts currently before the Court, appears to be separate and distinct from the underlying contract.   Accordingly, at this stage in the litigation, the Court denies Plaintiff's motion to dismiss to the extent it seeks dismissal of Count II for detrimental reliance/promissory estoppel.

      **3.      Count III–Unjust enrichment**

      Similarly to its argument with regard to promissory estoppel, the Plaintiff asserts that the existence of a contract bars a claim for unjust enrichment.  In addition, Plaintiff argues that the Defendants have failed to plead "the value of the supposed benefit."  In response, the Defendants again failed to directly address the Plaintiff's argument as to the insufficiency of their unjust enrichment claim, instead only arguing that unjust enrichment is properly pled as an alternative cause of action to a breach of contract claim.  *See* Docket No. 58, at 11.

      The elements necessary to prove that a party is entitled to recovery on the basis of

the equitable doctrine of unjust enrichment are: (1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value. *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 277 (3d Cir. 2007) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000)).  In other words, to sustain a counterclaim of unjust enrichment, the Defendants must show that the Plaintiff either wrongfully secured or passively received a benefit that would be unconscionable for the Plaintiff to keep without compensating the Defendants. *See Ankerstjerne v. Schlumberger Ltd.*, 2004 WL 1068806, at *6 (E.D. Pa. May 12, 2004) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d. Cir.1987)); *see also Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, *23 (E.D. Pa. 2006) (citing *Hershey Foods*, 828 F.2d at 999) (providing that the doctrine of unjust enrichment addresses situations where one party received a benefit that would be unconscionable to retain without compensating the provider).  "Although plaintiffs are free to pursue the alternative theories of recovery of breach of contract and unjust enrichment, the finding of a valid contract prevents a party from recovering for unjust enrichment as the measure of damages is limited to that which is provided for in the contract itself."[8]  *Halstead v. Motorcycle Safety Foundation, Inc.*, 71 F.Supp.2d 455, 459 (E.D. Pa. 1999) (citations omitted); *see Combustion Systems Services, Inc. v. Schuykill Energy Resources, Inc.*, 1993 WL 523713, at *5 (E.D. Pa. Dec. 15, 1993) (citations omitted) ("Where an express contract governs the relationship between the parties, a party's recovery is limited to the amount provided in the express

---

[8]        As to Defendants' argument regarding alternative pleading for a claim of unjust enrichment and breach of contract, *see supra*, note 5.

contract and where the contract fixes the value of the services involved, there can be no recovery under a theory of quantum meruit"); *U.S. v. Kensington Hosp.*, 760 F.Supp. 1120, 1135 (E.D. Pa. 1991) ("It is true that under Pennsylvania law, a contract prevents a party from making a claim of unjust enrichment; recovery is limited to the measure provided for in the contract") (citation omitted).[9]   However, similarly to a claim for promissory estoppel, a claim for unjust enrichment will not be barred if it concerns conduct outside the scope of the original agreement or contract.  *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).   Accordingly, for the same reasons stated above as to promissory estoppel, at this stage in the litigation, the Court denies Plaintiff's motion to dismiss to the extent it seeks dismissal of Count III for unjust enrichment.[10]

### 4.       Count V–Interference with contractual relations

The Plaintiff alleges that the Defendants failed to plead "what actions [the Plaintiff] took, what statements [the Plaintiff] made, to whom these unknown statements were made and the actions the recipients of these unknown statements took with respect to business relations with [the Defendants]."  Pl.'s Br., at 11.  Further, the Plaintiff asserts

---

[9]

  The Court notes that in *Kensington Hospital*, the district court "declined" to dismiss plaintiff's unjust enrichment claim based on alternative pleading: "Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment."  760 F.Supp. at 1135.

[10]

  Plaintiff also argues that Defendants' unjust enrichment claim must fail because the Defendants failed "to plead the value of the supposed benefit."  Docket No. 56, at 10.  In support of that contention, the Plaintiff relies upon *Worster Motor Lines, Inc. v. Lombardo*, 531 F.Supp. 106 (W.D. Pa. 1982), which in turn relied upon *Pulli v. Warren National Bank*, 412 A.2d 464, 465 (Pa. 1979), for the proposition that "[d]amages in quantum meruit for the reasonable value of services must be specially pleaded."  *Pulli*, 412 A.2d at 465.  In *Pulli*, the Court dismissed plaintiff's claim for quantum meruit because she failed to plead the reasonable value of her services as a housekeeper.  However here, Defendants' counterclaim for unjust enrichment is not based upon "the reasonable value of services" previously provided, but instead on the promise of future work.  Accordingly, those cases are inapposite to the instant one.

that because there are no averments that the Defendants lost customers or orders, this claim must fail.

Under Pennsylvania law, the elements of a cause of action for intentional interference with an existing contractual relationship include: (1) the existence of a contractual relationship between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *GNC Franchising, LLC v. Farid*, No. 2:05-cv-1741, 2007 WL 1437443, at *3 (W.D. Pa. May 14, 2007) (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. Ct. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997))). Here, Defendants' counterclaim for intentional interference with a contractual relationship fails as to the first element.

In their Amended Counterclaim, the Defendants allude to "business relations with third parties" and "lost contracts for work", presumably, the Court opines, in hopes of fulfilling the first requirement for said claim.[11]   However, the Defendants failed to specify the existence of a concrete, contractual relationship that has been interfered with as a result of Plaintiff's alleged conduct. *See Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 872 (Pa.Super.Ct. 1991) (providing that a claim for intentional interference

---

[11]    In the Court's estimation, Defendants' counterclaim for intentional interference with contractual relations sounds in intentional interference with prospective business relations. *See C.D. Peacock, Inc. v. Neiman Marcus Group, Inc.*, No. Civ. A. 97-5713, 1998 WL 111738, at *3 (E.D. Pa. March 9, 1998) (noting distinction between the two torts).  Regardless, because the Defendants fail to allege any concrete existing contractual or prospective business relationship, Defendants' claim fails nonetheless.  *Wolk v. Teledyne Industries, Inc.*, 475 F.Supp.2d 491, 512 -513 (E.D. Pa. 2007) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (providing that to state a cause of action for tortious interference with prospective contracts, a plaintiff must plead "something more than a mere hope or the innate optimism of the salesman") (applying Pennsylvania law).

with existing contractual relations (as opposed to a claim for intentional interference with prospective relations) is susceptible to "definite, exacting identification"). Furthermore, Defendants fail to plead in any fashion that the Plaintiff knew about or intended to harm said existing contractual relationship. *See GNC Franchising,* 2007 WL 1437443, at *3 (providing that second element constitutes purposeful action on the part of the defendant, specifically intended to harm the existing relationship).

The Court finds that the Defendants' vague references to "third parties" and "lost contracts" are insufficient as a matter of law to state a claim for intentional interference with existing contractual relations. Accordingly, the Court grants Plaintiff's motion to dismiss as to the claim for interference with contractual relationships and dismisses without prejudice Count V in the Amended Counterclaim. However, the Defendants may amend Count V within fifteen (15) days of the date of this Memorandum Opinion and Order.

**5.      Count VI–Violation of 42 Pa. C.S.A. 2503, abuse of process, and sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. 1927**

Finally, at Count VI, the Defendants request sanctions pursuant to 42 Pa. C.S.A. § 2503, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927. The Court will address each request as pled below.

*A.      42 Pa. C.S.A. § 2503*

Section 2503 allows for a "reasonable counsel fee as part of the taxable costs of the matter" to be recovered by "[a]ny participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary,

vexatious or in bad faith."[12]  *Id.*  A claim for attorney fees pursuant to 42 Pa. C.S.A. § 2503 may not be asserted by complaint but must be sought by petition following the conclusion of the underlying action.  *Seghetti v. Heritage Resorts of Gettysburg*, 19 Pa. D. & C. 4th 218, 220 (Pa. Com. Pl. 1993); *see also Shevchik v. Zwergel*, 8 Pa. D. & C. 4th 66 (Pa. Com. Pl. 1990).   Accordingly, Defendants' counterclaim for attorney fees pursuant to § 2503 is improperly pled and premature.

Plaintiff's motion to dismiss as to Count VII to the extent that the Defendants seek "reasonable counsel fees" under  42 Pa. C.S.A. § 2503 is granted; however, at the appropriate time and if applicable[13], the Defendants may file a petition for "reasonable counsel fees" under section 2503 accompanied by the requisite supporting averments and evidence.

### B.    Rule 11(b) sanctions

As a general matter, the Court finds that Federal Rule of Civil Procedure 11 does not provide for a separate and distinct cause of action.  *See Krisa v. Equitable Life Assur. Soc.*, 113 F.Supp.2d 694 (M.D. Pa. 2000) (striking affirmative defense that asserted violation of Rule 11, since Rule 11 requires presentation of a motion).  Rule 11(c)(1) provides that sanctions may be initiated either by (1) "a motion for sanctions ... made

---

[12]    The Court notes that because the Defendants failed to specify the particular subsection under which they seek counsel fees, the Court presumes that the Defendants request fees under § 2503(9).

[13]    While not raised by the parties, the Court notes that several cases have ruled that a party may move for fees under section 2503 when the federal court is sitting in diversity jurisdiction.  *See McCaw v. Motorists Mut. Ins. Co.*, C.A. No. 89-8868, 1990 WL 63608, at *3 (E.D. Pa. May 7, 1990); *Fuller v. Prudential Ins. Co.*, C.A. No. 89-2016, 1989 WL 127499, at *3 (E.D. Pa. Oct. 24, 1989); *P. Liedtka Trucking, Inc. v. James H. Hartman & Son, Inc.*, 537 F.Supp. 381, 382 (E.D. Pa.1982).  *But see Reitz v. Dieter*, 840 F.Supp. 353, 355 (E.D. Pa. 1993) (noting the above cases but providing that because section 2503(9) "is a procedural rule applicable in Pennsylvania's courts", "section 2503(9) has no force or application in federal court where the Federal Rules of Civil Procedure control") (federal-question jurisdiction).

separately from other motions or requests" describing the specific conduct alleged to violate Rule 11(b), or (2) upon the Court's own initiative.  Fed.R.Civ.P. 11(c)(1).  In terms of the former, there is no motion for sanctions "made separately from other motions or requests" currently before the Court; and, in terms of the latter, the Court declines to impose sanctions upon its own initiative at this time.  *See Dewees v. Dauphin County*, No. 1:CV-04-0291, 2005 WL 2100709, at \*1 (M.D. Pa. Aug. 26, 2005) (reserving Rule 11 sanctions for "exceptional circumstances" where a claim or motion is patently unmeritous or frivolous). Thus, Plaintiff's motion to dismiss as to Count VII to the extent that the Defendants seek sanctions pursuant to Rule 11 is granted; however, the Defendants may, if they so choose, file a motion ("made separately") for sanctions in compliance with Federal Rule of Civil Procedure 11(c).

C.     *28 U.S.C. § 1927*

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorney's fees reasonably incurred because of such conduct.

*Id.*  Similarly to a motion for sanctions under Rule 11, 28 U.S.C. § 1927 does not create a separate and distinct cause of action.  *See Raymark Industries, Inc. v. Baron*, No. CIV. 96-7625, 1997 WL 359333, \*7 (E.D. Pa. June 23, 1997) (agreeing with Defendants' argument that § 1927 does not provide an independent cause of action); *Wilson v. Bush*, 2006 WL 692305, at \*3 (M.D. Ga. March 15, 2006) (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 914 n. 3 (11 Cir.1982) (finding that 28 U.S.C. § 1927 does not create an independent cause of action, but that a party seeking § 1927 relief should do so

22

through an attorney fee petition, not a counterclaim); *Carbajal-Ramierez v. Bland Farms, Inc.*, 234 F.Supp.2d 1353, 1354-55 (S.D. Ga. 2001) (same).  Accordingly, Plaintiffs' motion to dismiss as to Count VII to the extent that the Defendants request "costs, expenses, and attorney's fees" pursuant to 28 U.S.C. § 1927 is granted; however, at the appropriate time and if applicable, the Defendants may file a petition for "costs, expenses, and attorney's fees" in compliance with section 1927.[14]

## OTHER ARGUMENTS

At this time, the Court addresses additional arguments and issues raised in Defendants' responsive brief.

### 1.    Res judicata and/or collateral estoppel

The Defendants contend that this Court "never ruled on 3-J and Moores' [sic] motion to dismiss [Plaintiff's] Complaint based on res judicata and/or collateral estoppel." Defs.' Br. at 11.

On January 12, 2007, Judge Thomas M. Hardiman held a hearing on Plaintiff's Motion to Dismiss Counterclaims [DE 9].  At the end of the hearing and after granting the Plaintiff's Motion, the Court ordered the parties to brief the *res judicata* issue.  On February 12, 2007, the parties each filed a brief in accordance with the Court's Order.

---

[14]        In its motion to dismiss, the Plaintiff also argues that because 3-J and Moore raised "these same issues" regarding sanctions in its original counterclaim, which Judge Hardiman denied on March 7, 2007, the doctrine of collateral estoppel applies and bars Defendants' claim for sanctions in their Amended Counterclaim. *See* Docket No. 56, at 12.  However, the Plaintiffs confuse two different motions for sanctions filed by the Defendants.  First, in their original counterclaim, the Defendants pled, at Count VII, a violation of 42 Pa. C.S.A. § 2503, *see* Docket No. 4, at ¶¶ 68-72, which Judge Hardiman dismissed without prejudice on January 12, 2007, *see* Docket No. 26, not March 7, 2007.  Therefore, Defendants' were entitled to re-file this count, which they did in their Amended Counterclaim and which the Court addresses here.  Second, on a separate and distinct occasion, the Defendants filed a Motion to Strike Olson's Sur-Reply Brief [DE 30], within which the Defendants requested sanctions with regard thereto.  On March 7, 2007, Judge Hardiman granted the motion to strike but denied Defendants' request for sanctions.  This denial of sanctions as to the motion to strike has no effect on the request for sanctions in Defendants' Amended Counterclaim.  Accordingly, Defendants' various requests for sanctions in its Amended Counterclaim are not barred by the doctrine of collateral estoppel.

On February 16, 2007, the Plaintiff filed, without leave of Court, a Response to Defendant's brief, which prompted a Motion to Strike by the Defendant.

Contrary to Defendants' instant argument, on March 7, 2007, Judge Hardiman resolved these issues by: (1) denying without prejudice Defendants' Motion to Dismiss Plaintiff's Complaint on the grounds of *res judicata*, raised orally at the hearing on January 12, 2007; (2) allowing the Plaintiff thirty (30) days to file a first Amended Complaint; and (3) granting Defendants' motion to strike Plaintiff's sur-reply but denying their request for sanctions. *See generally*, Docket No. 33.  In particular, Judge Hardiman noted that the parties represented to the Court at the March 7, 2007 telephonic status conference that they required additional discovery as to the *res judicata* issue. Accordingly, the Court has ruled on the Defendants' motion to dismiss on the grounds of *res judicata* and there is no such similar motion currently pending before the Court, and thus the Court declines to comment further.

### 2.    Defendants' partial motion for summary judgment

To the extent that Defendants 3-J and Moore seek partial summary judgment as to Plaintiff's Complaint, *see* Defs.' Br. at 12-14, because the Defendants did not follow the Local Rules governing a motion for summary judgment in that they failed to file a concise statement of material facts, a memorandum in support, and an appendix, *see* W.D. Pa. L.R. 56.1(B) (providing that "[t]he motion for summary judgment ... *must* be accompanied by" a concise statement of material facts, a memorandum in support, and an appendix) (emphasis added), the Court is unable to rule on the merits therein, *see Ziller v. Emerald Art Glass*, Civil Action No. 05-82, 2006 WL 2853976, at *1 (W.D. Pa. Oct. 4, 2006) (denying without prejudice motions for summary judgment for failure to comply

with Local Rules).  Accordingly, the Court denies without prejudice Defendants' motion for partial summary judgment as pled in their responsive brief.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Dismiss Amended Counterclaim Counts I, II, III, V, and VI Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted [DE 55] is **GRANTED** in part and **DENIED** in part.  Further, Defendants' motion for partial summary judgment as pled in their responsive brief is **DENIED**.  An appropriate Order to follow.


<u>s/ Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge

Dated: September 18, 2007

cc:     All counsel of record