# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRAUS INDUSTRIES, INC., d/b/a OLSON INDUSTRIES, INC., | ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| vs. | ) ) | Civil Action No. 06-542 |
| JERRY MOORE and 3-J MACHINING SERVICES, INC., | ) ) ) | |
| Defendants/Counterclaim-Plaintiff. | ) | |

## **MEMORANDUM ORDER**

This matter is before the Court on a Motion to Compel Olson Industries to Comply with Discovery and Motion for Sanctions [DE 76], filed by Defendants Jerry Moore and 3-J Machining Services, Inc. (hereinafter, "Defendants") on December 19, 2007. In its motion, Defendants contend that they served a written set of Interrogatories and Request for Production on Plaintiff on or about September 27, 2006, to which Plaintiff responded "incompletely" on May 16, 2007. (Docket No. 76, at 2). Defendants contend that counsel for the Plaintiff has failed to fully respond to the legitimate discovery requests despite numerous letters and telephone calls demanding a response. On December 27, 2007, Plaintiff Kraus Industries, Inc., d/b/a Olson Industries, Inc. (hereinafter, "Kraus") filed a Response to Motion to Compel and for Sanctions (Docket No. 79), in which Plaintiff delineates its objections to the discovery requests.

On January 9, 2008, the Court held a motion hearing on the pending motion to compel. Based on the Defendants' non-compliance with the Federal Rules of Civil Procedure as well as the Local Rules insofar as they failed to arrange a meet and confer with Plaintiff's counsel regarding the instant motion, the Court ordered the parties to do the same and to report to the Court any and all remaining discovery disputes. On January 22, 2008, the parties jointly submitted via facsimile

transmission a letter to the Court reporting on the status of the discovery disputes. Specifically, the parties represented that they reached agreement as to Interrogatories 4 and 8, but that discovery disputes remained as to Interrogatories 14-18[1], which the Court will address below.

On January 30, 2008, Plaintiff filed a Supplemental Response to Motion to Compel and For Sanctions (Docket No. 82), in which it asserts that five (5) interrogatories remain in dispute and provided argument as to the same. On the same day, Defendants filed 3-J and Jerry Moore's Supplement to Motion to Compel and for Sanctions and Motion to Join Malone Middleman as an Additional Defendant (Docket No. 84), in which they re-assert their arguments from the original motion to compel.

On February 8, 2008, the Court held a subsequent motion hearing on the pending motion to compel, at which time the Defendants withdrew the instant motion to the extent that they seek sanctions and dismissal and thus, those issues are now moot.

Accordingly, the Court will only consider the instant motion to the extent that the Defendants seek an order from the Court compelling responses to certain discovery requests, specifically the disputes pointed out by the parties in the joint January 22, 2008 facsimile transmission, their respective supplements, and/or at the February 8, 2008 motion hearing. To the extent that Defendants raised discovery disputes in their original motion (Docket No. 76) but not in the subsequent submissions or at the February 8, 2008 motion hearing, the Court presumes that the parties have reached agreement as to the same as a result of the January 21, 2008 meet and confer.

---

[1] At the February 8, 2008 motion hearing, counsel for the Plaintiff clarified that the disputed interrogatories were 14-17 and 19. Nevertheless, the parties addressed Interrogatory 18 there, and the Court will do so below.

The Court now turns to the remaining discovery disputes, as outlined by the parties.

I.      **Remaining discovery disputes**

   A.      *Interrogatory 14*

Interrogatory 14 requests the following:

> Identify all contracts or projects that Olson entered into in the last 3 years with any entity that 3-J could have acted as a subcontractor and/or fabricator.  A.  State the names, payments and dates of payments, including any amounts presently due and owing any such sub-contractor, that Olson has made to all successful sub-contractors that are identified in Interrogatory 14.[2]

Docket No. 77.  Plaintiff asserts that the interrogatory is unintelligible and that Defendants have agreed to rephrase the same.  Defendants respond that the "question was written in plain English and could not be more artfully phrased." (Docket No. 84, at 10).  Defendants cite no case law in support of their argument.

At the February 8, 2008 motion hearing, counsel for the Defendants agreed to re-write Interrogatory 14 and the Court orders that Defendants shall serve the same upon the Plaintiff by February 15, 2008.  Plaintiff shall respond by February 22, 2008.  Accordingly, Defendants' motion to the extent that they seek an order compelling a response to Interrogatory 14 is denied as moot.

   B.      *Interrogatory 15*

Interrogatory 15 requests the following:

> Please identify all witnesses that you [Plaintiff] expect to call at trial.
> A.  Please provide a summary of what each prospective witness shall testify to at the time of trial.

---

[2] The Court notes that in the jointly submitted January 22, 2008 letter to the Court, the parties represent that Defendants agreed to rephrase the interrogatory and re-submit the same to Plaintiff. However, in their Supplement, Defendants do not reference this agreement.

Docket No. 77. Plaintiff asserts that it has provided a list of witnesses, except expert witnesses, but that it cannot formulate what their testimony will be. Relying on *Hickman v. Taylor*, 329 U.S. 495 (1947), Plaintiff contends that its opinions and expectations regarding witness testimony constitutes work product insofar as Defendants request that Plaintiff create documents regarding witness testimony. Further, Plaintiff asserts that Defendants' request for a summary of witness testimony falls outside the scope of Rule 26(b)(3) in that the Rule does not require counsel for the Plaintiffs to "create documents for opposing counsel." Defendants respond that they are entitled to know what each potential witness will testify to and further assert that summaries of witness testimony may streamline discovery and depositions. Defendants cite no case law in support of their argument.

In *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35 (D.Md. 2000), the Court held that defendant would not be required to answer plaintiff's interrogatory requiring defendant to summarize the substance of expected testimony of each witness it intended to call at trial, as such requirement imposed an unreasonable burden on defendant. In particular, the Court provided the following reasons:

> First, if it does not directly trespass on information protected by the work product doctrine, it certainly comes close to doing so. Second, it clearly is burdensome, as it would impose a disclosure obligation on defendants greater in scope, and earlier in time, than otherwise required by the rules of procedure, and the local rules of this Court. At this point in the litigation, it is premature to expect the defendants to have identified their trial witnesses. Even when the pretrial process makes it more reasonable for them to have done so, requiring them to summarize expected testimony from witnesses, some of whom may already have been deposed, and others of whom may be outside the control of the defendants, is an unreasonable burden.

*Id.* at 42-43. *See also Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 15 (D.D.C. 2004) (denying interrogatory request for witness names and summaries as premature in light of Rule

4

26(a)(3) which only requires the names of witnesses expected to testify at trial 30 days in advance of the trial date as well as violative of the work product doctrine).

The Court finds that Interrogatory 15 imposes an "unreasonable burden" upon Plaintiff insofar as Defendants seek a summary of witness testimony and, therefore, the Court will sustain Plaintiff's objection as to Interrogatory 15.[3] Accordingly, Defendants' motion to the extent that they seek an order compelling a response to Interrogatory 15 is denied.

C. *Interrogatory 16*

Interrogatory 16 requests the following:

> Please identify and describe in detail all communications that you have had with Cary Transue regarding any and all matters pertaining to the captioned litigation.

Docket No. 77. Plaintiff asserts that any communications between Plaintiff and Mr. Transue are protected under the attorney work product doctrine and/or the attorney client privilege. Defendants respond that because Transue was not an employee of Plaintiff at the time of his deposition, the contents of conversations between Kraus and Transue as well as Transue's "papers" are discoverable and not protected as attorney work product or by the attorney client privilege.

At the February 8, 2008 motion hearing, counsel for the Defendants limited the scope of Interrogatory 16 to communications occurring <u>after</u> Mr. Transue's employment with the Plaintiff and

---

[3] In addition, while Plaintiff provided a list of witnesses to Defendants in response to Interrogatory 15, pursuant to Federal Rule of Civil Procedure 26(a)(3), the Court notes that Plaintiff was under no obligation to do so until thirty (30) days prior to trial. The Court further notes that no trial date has been set in this matter. Moreover, as pointed out by the Court on the record at the February 8, 2008 motion hearing, the Court's Practices and Procedures contemplate proffers and the parties will be required to supplement their pre-trial statements.

thus, the Court will only consider Interrogatory 16, to that extent.[4]

At the outset, the Court notes that "[t]he party resisting discovery also bears the burden of demonstrating the applicability of an evidentiary privilege, such as the attorney-client privilege or the work-product privilege, as a bar to discovery." *McCrink v. Peoples Benefit Life Ins. Co.*, No. Civ.A.2:04CV01068LDD, 2004 WL 2743420, *1 (E.D. Pa. Nov. 29, 2004) (citation omitted). As to the work product doctrine, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3)." *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 966 (3d. Cir. 1988).

The plain language of Interrogatory 16 seeks discovery as to "all communications" between Plaintiff and Transue (occurring after his employment with the Plaintiff) "regarding any and all matters pertaining to the captioned litigation." Docket No. 77.[5] The Court will analyze this interrogatory request from two perspectives: (1) communications in the presence of counsel and (2) communications in the absence of counsel.

First, as to communications between Transue and Kraus in the presence of counsel, Federal Rule of Civil Procedure 26 partially codified the work product doctrine, the federal common law rule

---

[4] The Court opines that communications between Transue and counsel for the Plaintiff either alone or in the presence of Kraus occurring *during* Transue's employment would most likely be protected from discovery under both the attorney client privilege as well as the work product doctrine (to the extent made in anticipation or defense of litigation).

[5] The Court notes that Defendants have not specifically requested discovery as to communications surrounding Mr. Transue's deposition. At the February 8, 2008 motion hearing, the parties informed the Court that Mr. Transue's deposition occurred on July 13, 2007, at which Mr. Transue was not represented by a personal attorney. However, Mr. McShea attended the same on behalf of Plaintiff. Further, counsel for the Plaintiff represented at the February 8, 2008 motion hearing that Plaintiff did not waive the privileges at Transue's deposition.

announced in *Hickman v. Taylor*, 329 U.S. 495 (1947). Rule 26 provides, in relevant part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3).[6] Applied here, the Court finds that to the extent that Defendants seek disclosure of communications between Transue and counsel for the Plaintiff occurring *after* Transue's employment at Kraus in which counsel communicated conclusions, opinions, or legal theories regarding the instant litigation, the same is protected by the work product doctrine and not subject to discovery. *See Peralta v. Cendant Corporation*, 190 F.R.D. 38, 42 (D. Conn. 1999). Because the Court finds that the work product doctrine applies here, the Court declines to hold whether the attorney client privilege applies to the same.[7]

In response to Plaintiff's argument, Defendants argue that "the statements made in front of Transue by Kraus and McShea are discoverable." Docket No. 84, at 9. The Court construes this

---

[6] Rule 26 provides for instances where the above may discoverable, however, the rule further provides for protection against disclosure. *See* Fed.R.Civ.P. 26(b)(3)(A)-(B).

[7] Nonetheless, courts construing federal law have applied the attorney client privilege to communications between counsel and a former employee occurring after the employee's employment but concerning conduct or knowledge arising out of the employee's employment. *See U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 340 F.Supp.2d 554, 558 (E.D. Pa. 2004) (holding that "if the communication sought to be elicited relates to [the former employee's] conduct or knowledge during h[is] employment with [] Defendants, or if it concerns conversations with corporate counsel that occurred during h[is] employment, the communication is privileged; if not, the attorney-client privilege does not apply"); *Peralta v. Cendant Corporation*, 190 F.R.D. 38, 40 (D. Conn. 1999) (holding privileged any communications (whenever they occurred) between counsel for plaintiff and the former employer where the nature and purpose of the communication was to learn facts related to the litigation (alleged employment discrimination and termination) of which the former employer knew as a result of her employment).

assertion as a waiver argument. However, "[u]nlike the attorney-client privilege, the party invoking the work product doctrine does not bear the burden of proving non-waiver." *In re National Medical Imaging, L.L.C.*, No. 05-12714DWS, 2005 WL 3299712, at *4 (Bkrtcy. E.D. Pa. Oct. 13, 2005) (citing *Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC*, 202 F.R.D. 418, 423 (E.D. Pa. 2001)). In other words, Defendants bear the burden to establish waiver of the work product doctrine and the Court finds that Defendants' above-noted lone sentence consisting entirely of argument of counsel fails to establish waiver. Moreover, "[t]he work product doctrine protects information from opposing parties, rather than from all others outside a particular confidential relationship." *Hatco Corp. v. W.R. Grace & Co.-Conn.*, Civ. A. No. 89-1031, 1991 WL 83126, at *7 (D.N.J. May 10, 1991) (citation omitted). *See also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 at 210 (1970) (work product doctrine protects against disclosure to opposing counsel and client). Thus, the Court finds that the communications between Mr. Kraus and his counsel regarding the instant litigation even in the presence of Transue occurring after Transue's employment are still afforded protection under the work product doctrine.[8]

Second, as to communications between Mr. Kraus and Transue occurring after his

---

[8] In support of their argument, Defendants cite four cases in support of their argument that "statements made in front of Transue by Kraus and [counsel for the Plaintiff] are discoverable." (Docket No. 84 at 9-10). As to the first case (i.e., "In re Lineboard, 237 F.R.D. (E.D. Pa. 2006)"), Defendants provide an incomplete citation by failing to note the page number in the Federal Rules of Decision and the Court declines to search for the same. As to the second case (i.e., "Cherryvale Grain Co. v. First State National Bank of Edna, 971 P.2d 1204 (Kan. App.1999)"), the Court there found a waiver of the attorney client privilege, which the Court does not rely on here. As to the third case (i.e., "US Coal Companies v. Powell Construction Co., 839 F.3d 958 (3d Cir. 1988)"), Defendants provide an incorrect citation insofar as "839 F.3d 958" does not correlate to a published case. And finally, as to the fourth case (i.e., "US v. United Shoe Machinery Corp, 89 F.Supp. 357 (DC Mass. 1950)"), the Court there discussed the attorney client privilege as to certain exhibits, again which the Court does not rely upon here.

employment and in the absence of counsel, Plaintiff has failed to carry its burden and establish the applicability (by way of citation to case law or other authority or even argument) of the attorney client privilege or the work product doctrine to such a factual scenario. Accordingly, said communications may be subject to disclosure to the extent that said communications did not occur at the direction of Plaintiff's counsel.

Accordingly, Defendants' motion to the extent that it seeks an order compelling a response to Interrogatory 16 as to communications between Mr. Kraus and Transue in the presence of counsel is denied; however, to the extent that Defendants seek communications merely between Messrs. Kraus and Transue (occurring not at the direction of counsel), Defendants' motion is granted and Plaintiff shall respond by February 22, 2008.[9]

D.  *Interrogatory 17*

Interrogatory 17 requests the following:

> Identify and describe with particularity all contracts, including performance history and payments, that Olson has been a party to in the last 3 years.

Docket No. 77. Plaintiff asserts that Interrogatory 17 is not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome and overbroad.[10] In particular, Plaintiff relies on Rule 26(b)(1), which requires discoverable financial information to be relevant to a claim

---

[9] Separate and distinct from the substance at issue in Interrogatory 16, the Court notes the practical obstacles in responding to Interrogatory 16 insofar as counsel for the Plaintiff represented at the February 8, 2008 motion hearing that Plaintiff did not keep records of conversations between Messrs. Kraus and Transue in the normal course of business, especially, the Court presumes, those conversations occurring after Transue's employment.

[10] At the February 8, 2008 motion hearing, counsel for Defendants questioned how Plaintiff booked orders and specifically mentioned that Mr. Transue was paid less in 1999.

or defense; however here, Plaintiff asserts that the production of all contracts is outside the scope of the relationship between the parties. In the alternative, if the Court deems the same discoverable, Plaintiff requests the production of the same pursuant to a confidentiality agreement given requirements of various clients for confidentiality and given their proprietary nature. Plaintiff also requested an in camera review, if necessary. In their Supplement, Defendants do not specifically respond to Plaintiff's argument concerning Interrogatory 17.

As stated, Interrogatory 17 is overbroad and Defendants have failed to establish that the discovery requested is reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Court will sustain Plaintiff's objection as to Interrogatory 17; however, if they so desire, Defendants may re-write Interrogatory 17 and, if they do, they shall serve the same upon the Plaintiff in accordance with the above by February 15, 2008 and Plaintiff shall respond by February 22, 2008.

E.   *Interrogatory 18*

Interrogatory 18 requests the following:

> Identify and describe with particularity all litigation in any forum that Olson has been involved in for the last five years.

Docket No. 77. Plaintiff asserts that Interrogatory 18 is "overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Further, Plaintiff asserts that it has responded with a listing of all litigation that is a matter of public record and has complied in good faith. Defendants do not directly respond to this statement in their Supplement.

At the February 8, 2008 motion hearing, to the extent that it has not complied with Interrogatory 18, Plaintiff represented to the Court that it will do so. Accordingly, the Court orders

10

the Plaintiff to respond fully and completely to Interrogatory 18 by February 22, 2008, to the extent not already done.

F.  *Interrogatory 19*

Interrogatory 19 requests the following:

> Identify and describe with particularity any and all billing disputes that Olsen has had with any party for the past three (3) years.

Docket No. 77. Plaintiff responds that Interrogatory 19 is overbroad as well as "not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome." Nevertheless, Plaintiff explains that, in addition to the instant dispute, it has had billing disputes with another vendor as well as Thomas Steel and other disputes that did not result in litigation.

As Interrogatory 19 reads, the Court finds that the same is overbroad. However, finding that it may lead to admissible evidence, Defendants may re-write Interrogatory 19 in a more narrow fashion, e.g., billing disputes related to subcontractors/fabricators, and serve the same upon Plaintiff by February 15, 2008.[11] Plaintiff shall respond by February 22, 2008.

G.  *Financial documents*

As clarified during the February 8, 2008 motion hearing, Defendants seek financial documents as requested during the deposition of Mr. Kraus and allegedly "promised" to them by counsel for the Plaintiff.[12] Plaintiff argued that there was no agreement and the request for financial information constitutes harassment and a "fishing expedition." The Court notes that there is no

---

[11] Further, in the Court's view, Defendants must define "billing disputes," e.g., all disputes resulting in litigation or another specific definition.

[12] In particular, at the February 8, 2008 motion hearing, counsel for the Defendants represented that counsel for the Plaintiff promised a "spreadsheet."

outstanding discovery request or interrogatory as to the precise issue of disclosure of financial information.

As an initial matter, Defendants argue in their Supplement that despite the "Court's Order" at the November 6, 2007 Settlement Conference, Plaintiff has still refused to turn over financial information to Defendants. *See* Docket No. 84, at 4-5. Defendants do not specifically address the merits of why they are entitled to "financial information" or define the boundaries of this "request," but instead seemingly rely on their representation that the Court has previously ordered Plaintiff to turn over information requested.

Contrary to Defendants' argument, the Court's review of the hearing memorandum issued subsequent to the November 6, 2007 Settlement Conference reveals no order from the Court directing Plaintiff to turn over financial information. *See* Docket No. 72. Thus, without further evidence, Defendants' argument that Plaintiff has violated a court order stemming from the November 6, 2007 Settlement Conference is without merit. Furthermore, the Court finds Defendants' argument that they require financial information to attack credibility to be equally without merit.

While counsel for the Defendants argued the need for financial information at the motion hearing and the Court opined that they may be entitled to the same *to some degree*, as there is no formal document request or interrogatory before the Court as to "financial information," the Court cannot compel a response to the same, at this time. Accordingly, to the extent that Defendants seek financial information, the Court advises Defendants to serve a proper discovery request upon the Plaintiff within the realm of the Federal Rules of Civil Procedure by February 15, 2008. Defendants shall respond by February 22, 2008. Further, the Court encourages the parties to seek agreement as

to any potential dispute regarding the disclosure of such financial information, including the possibility of the entry of an agreed upon protective order.

   H.   *Interrogatories 1 and 3*

The Court notes that, in their Supplement, Defendants seemingly assert that Interrogatories 1 and 3 remain in dispute. *See* Docket No. 84, at 7, 8. However, at the February 8, 2008 motion hearing, upon inquiry by the Court, counsel for the Defendants asserted that no dispute existed as to Interrogatories 1 and 3 and thus the Court declines to address the same.

   I.   *Other discovery issues*

At the February 8, 2008 motion hearing, the parties also raised the issue of time limits on depositions, specifically as to Defendant Moore and Mr. Transue.

The Court will permit an extended time period beyond the 7-hour limit to depose Defendant Moore and the Court will consider the same once Mr. Transue's initial setting is complete (the parties reported that Mr. Transue's deposition has lasted four hours).

II.   **Conclusion**

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Compel Olson Industries to Comply with Discovery and Motion for Sanctions [DE 76].

The Court denies the motion as to Interrogatories 14 and 15. The Court also denies the motion as to Interrogatory 16 insofar as the same requests communications between Messrs. Kraus and Transue occurring after Transue's employment and in the presence of counsel; however, the Court grants the motion as to Interrogatory 16 insofar as the same requests communications between Messrs. Kraus and Transue occurring after Transue's employment and outside the presence of counsel and/or not at the direction of counsel. The Court further denies the motion as to

Interrogatories 17 and 19; however, Defendants may re-write the same and serve them upon Plaintiff by February 15, 2008 and Plaintiff shall respond by February 22, 2008. The Court grants the motion as to Interrogatory 18 and Plaintiff shall respond fully and completely, to the extent that it has not done so already. As to financial documents, the Court denies the motion but Defendants may serve a proper discovery request upon Plaintiff by February 15, 2008 and Plaintiff shall respond by February 22, 2008. Finally, as to the time limit of depositions, the Court will permit the deposition of Defendant Moore to exceed the seven hour time limit, and the Court will consider the same as to Mr. Transue, if and when it becomes necessary to do so.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.

Date: February 11, 2008